694 F.2d 1159
 Unempl.Ins.Rep. CCH 21,701
Jean A. WOOD and Jean A. Wood Nurses' Registry and
Employment Agency, Inc., Plaintiffs-Appellants,
v.
Larry SARGEANT, J. Van Skike, J.M. Bergeron, Morris Mencoff,
Maurice Roberts, E.L. Sullivan, Martin R. Glick, California
Employment Development Department and California
Unemployment Insurance Appeals Board, Defendants-Appellees.
 No. 81-4663.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 14, 1982.
Decided Dec. 17, 1982.
 
 Francis L. Wood, Santa Rosa, Cal., for plaintiffs-appellants.
 Richard F. Finn, San Francisco, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before DUNIWAY, FLETCHER, and BOOCHEVER, Circuit Judges.
 DUNIWAY, Circuit Judge:
 
 
 1
 Jean A. Wood is the owner of Jean A. Wood Nurses' Registry and Employment Agency, Inc., a corporation. We refer to them both as "Wood." The California Employment Development Department audited the Registry's books and levied an assessment of $41,806.93 in unpaid unemployment taxes. Wood and her company exhausted the available administrative procedures for review of the assessment. The next step, under California law, was to pay the tax, seek a refund, and, if that was denied, sue in the California courts. Cal. Unemployment Ins. Code Secs. 1241-1243. The judicial remedy could be invoked only by first paying the tax. Cal. Const. Art. 13, Sec. 32, and Cal.Unemp.Ins.Code, Sec. 1851.
 
 
 2
 Wood, however, did not go that route, but instead sued the Department and its agents and the California Unemployment Insurance Appeals Board in the district court. Jurisdiction was based upon 28 U.S.C. Secs. 1331, 1341, 1343, and 2201, and 42 U.S.C. Secs. 1983 and 1988. The amended complaint alleges:
 
 
 3
 Plaintiffs do not have sufficient assets to pay the illegal tax assessment levied by the defendant Department in the sum of $41,806.93. Liquidation of all of plaintiffs' assets would raise less than $30,000. Such liquidation would force the plaintiffs into bankruptcy and out of business. Plaintiffs have been unable to borrow any money to pay the tax assessment.
 
 
 4
 The prayer is for a declaratory judgment that the tax is invalid and an injunction against the assessment or collection of the tax.
 
 
 5
 The defendants moved to dismiss, relying primarily upon 28 U.S.C. Sec. 1341, which provides:
 
 
 6
 The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.
 
 
 7
 The motion was granted, judgment was entered, and Wood appeals. We affirm.
 
 
 8
 It is not disputed that, if Wood paid the tax and followed the California procedures to obtain a refund, Wood could raise before the California courts all of the claims that Wood seeks to have vindicated in the district court. It is not argued that the state remedy is not "plain," or "speedy." The only contention is that it is not "efficient," or, more generally, that plaintiffs cannot use it because they cannot raise the money to pay the assessment.
 
 
 9
 We have repeatedly held that because of Sec. 1341, the district court cannot proceed with a case attacking a state tax where the plaintiff has not exhausted the state's "pay and sue" type of remedy, and that Sec. 1341 applies to an action for a declaratory judgment just as it does to an action for an injunction. Corbett v. Printers & Publishers Corp., Ltd., 9 Cir., 1942, 127 F.2d 195, 197; West Pub. Co. v. McColgan, 9 Cir., 1943, 138 F.2d 320, 325-326; Harsh California Corp. v. County of San Bernardino, 9 Cir., 1958, 262 F.2d 626, 630; Aronoff v. Franchise Tax Board of the State of California, 9 Cir., 1965, 348 F.2d 9, 11; Randall v. Franchise Tax Board of the State of California, 9 Cir., 1971, 453 F.2d 381, 382; Mandel v. Hutchinson, 9 Cir., 1974, 494 F.2d 364, 366-367; Kelly v. Springett, 9 Cir., 1975, 527 F.2d 1090, 1093-1094.
 
 
 10
 In none of these cases, however, did we decide whether a plaintiff's inability to pay the tax renders the state remedy, as to that plaintiff, one which is not "efficient," or one which cannot "be had in the courts of [the] State" (Sec. 1341). We now hold that inability to pay the tax does not avoid the jurisdictional bar of Sec. 1341.
 
 
 11
 In two recent cases, the Supreme Court has considered and applied Sec. 1341. In Rosewell v. LaSalle National Bank, 1981, 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464, the Court held that Sec. 1341 barred the action, although, under the Illinois statute, the refund obtainable under the state procedure did not bear interest and the usual duration of litigation to obtain it was two years. The Court concluded that
 
 
 12
 On its face, the "plain, speedy and efficient remedy" exception appears to require a state-court remedy that meets certain minimal procedural criteria. (emphasis in original). (p. 512, 101 S.Ct. at p. 1228).
 
 
 13
 * * *
 
 
 14
 * * *
 
 
 15
 Respondent does not allege any procedural defect in the Illinois remedy, other than delay, that would preclude preservation and consideration of her federal rights, since she is free to raise her equal protection and due process federal constitutional objections during the Application for Judgment proceedings before the Circuit Court of Cook County. Rather, respondent's argument--that Illinois' failure to pay interest on the tax refund makes the remedy not "plain, speedy and efficient"--appears to address a more substantive concern. (pp. 514-515, 101 S.Ct. at p. 1230)
 
 
 16
 The Court then discussed the meaning of the words "plain," "speedy," "efficient" and "remedy" in Sec. 1341 (pp. 516-521, 101 S.Ct. at 1230-33). It finally concluded:
 
 
 17
 It would be wholly unreasonable, therefore, to construe a statute passed to limit federal-court interference in state tax matters to mean that Congress nevertheless wanted taxpayers from States not paying interest on refunds to have unimpaired access to the federal courts. If Congress had meant to carve out such an expansive exception, one would expect to find some mention of it. The statute's broad prophylactic language is incompatible with such an interpretation. (p. 524, 101 S.Ct. at p. 1234).
 
 
 18
 We think that the same can be said of a construction of Sec. 1341 that would permit every state taxpayer who asserted or demonstrated an inability to pay the amount of the assessed tax to go into federal court to attack the tax. The potential of such a construction for obstructing the collection of state and local taxes, and for disrupting the orderly administration of the tax laws of the state, is great. We do not think that the Congress intended such a result. As the Court pointed out in Rosewell, the Congress knew when it adopted Sec. 1341 in 1937 "that state tax systems commonly provided for payment of taxes under protest with subsequent refund as their exclusive remedy." (p. 523, 101 S.Ct. at p. 1234) We cannot believe that Congress thought that the barrier to federal suits that it was erecting would have in it a door to the federal courts so wide as to admit every impecunious or financially distressed taxpayer, or that the Supreme Court would open such a door.
 
 
 19
 Our view is strengthened by the Court's decision in California v. Grace Brethren Church, 1982, --- U.S. ----, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982). There, the Court held that Sec. 1341, although it speaks primarily of injunctions ("shall not enjoin, suspend or restrain") also prohibits declaratory judgment actions attacking the validity of the tax. The Court then analyzed the very provisions of the California Unemployment Insurance Code that are involved here, particularly Sec. 1241, and held that the remedy afforded was "plain, speedy and efficient" within the meaning of 28 U.S.C. Sec. 1341, relying upon and following Rosewell, supra. Again, the Court emphasized, quoting Rosewell, "Congress' primary purpose 'to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes.' " --- U.S. at ----, 102 S.Ct. at 2508.
 
 
 20
 Our conclusion is also supported by cases holding that inability to pay a tax and thus invoke the refund remedy is not a basis for invoking equity jurisdiction to attack a federal tax in face of 26 U.S.C. Sec. 7421(a), which provides, with certain exceptions, that "no suit for the purpose of restraining the assessment or collection of any [federal] tax shall be maintained in any court by any person...." This is the basis for the federal "pay and sue" rule. In Westgate-California Corporation v. United States, 9 Cir., 1974, 496 F.2d 839, 843, we said: "It is settled that a suit to enjoin the assessment or collection of taxes, in spite of Sec. 7421(a), 'may not be entertained merely because collection would cause an irreparable injury, such as the ruination of the taxpayer's enterprise.' Enochs [v. Williams Packing and Navigation Co.], supra, 370 U.S. at 6, 82 S.Ct. [1125] at 1129 [8 L.Ed.2d 292] (emphasis supplied)." (footnote omitted). See, also, California v. Latimer, 1938, 305 U.S. 255 at 262, 59 S.Ct. 166 at 169, 83 L.Ed. 159; Cool Fuel, Inc. v. Connett, 9 Cir., 1982, 685 F.2d 309, at 314; Monge v. Smyth, 9 Cir., 1956, 229 F.2d 361, 366; Reams v. Vrooman-Fehn Printing Co., 6 Cir., 1944, 140 F.2d 237, 240, 241-242; Kaus v. Huston, 8 Cir., 1941, 120 F.2d 183, 185.
 
 
 21
 There is dictum in 28 East Jackson Enterprises, Inc. v. Cullerton, 7 Cir., 1975, 523 F.2d 439, at 441, to the effect that, because the plaintiff in that case did not have, and could not borrow, sufficient funds to pay a local real property tax, the remedy of paying the tax and seeking a refund was "not available." No authority is cited, and there is no discussion of reasons. Cf. Schneider Transport, Inc. v. Cattanach, 7 Cir., 1975, 657 F.2d 128, 133-134. We are not persuaded. See, also, Denton v. City of Carrollton, Ga., 5 Cir., 1956, 235 F.2d 481, 485, involving a tax on labor union organizers, that appeared to be designed to defeat the Labor Management Relations Act. No similar motivation appears here.
 
 
 22
 As to the defendants California Employment Development Department and California Unemployment Insurance Appeals Board, the action is barred by the Eleventh Amendment to the United States Constitution. V.O. Motors, Inc. v. California State Board of Equalization, 9 Cir., 1982, 691 F.2d 871.
 
 
 23
 Affirmed.